## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| ANTHONY FRANCHI, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 17-898 ) ) JURY TRIAL DEMANDED |
| CEMPRA, INC., CASTLE ACQUISITION CORP., GARHENG KONG, DAVID ZACCARDELLI, RICHARD KENT, DAVID GILL, DOV A. GOLDSTEIN, JOHN H. JOHNSON, P. SHERRILL NEFF, MICHAEL DOUGHERTY, and MELINTA THERAPEUTICS, INC., | ) ) COMPLAINT -- CLASS ACTION ) ) ) ) ) ) |
| Defendants. | ) |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on August 8, 2017 (the "Proposed Transaction"), pursuant to which Cempra, Inc. ("Parent") and its wholly-owned subsidiary, Castle Acquisition Corp. ("Merger Sub, and together with Parent, "Cempra" or the "Company"), will merge with Melinta Therapeutics, Inc. ("Melinta") in a reverse merger.

2. On August 8, 2017, Parent's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an Agreement and Plan of Merger and Reorganization, which was subsequently amended on September 6, 2017 (as amended, the "Merger Agreement"), with Melinta. Pursuant to the terms of the Merger Agreement, Merger

Sub will merge with and into Melinta, with Melinta surviving as a wholly-owned subsidiary of Parent. At the effective time of the Proposed Transaction, each share of Melinta common stock will be converted into and exchanged for the right to receive a number of shares of Cempra common stock equal to the exchange ratio calculated in accordance with the Merger Agreement. Immediately following the effective time of the Proposed Transaction, Melinta stockholders are expected to own approximately 51.9%, and Cempra's current stockholders are expected to own approximately 48.1% of Cempra common stock.

3. On September 7, 2017, defendants filed a Preliminary Proxy Statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction. The Proxy Statement requests that Cempra stockholders approve, among other things, the issuance of Cempra common stock pursuant to the Merger Agreement; a proposal to amend Cempra's certificate of incorporation to increase the number of authorized shares of Cempra common stock from 80 million to 250 million; and a proposal to approve amendments to Cempra's certificate of incorporation to effect a reverse stock split.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

**PARTIES**

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Parkway common stock.

9. Defendant Parent is a Delaware corporation and maintains its headquarters at 6320 Quadrangle Drive, Suite 360, Chapel Hill, NC 27517. Parent's common stock is traded on the NasdaqGS under the ticker symbol "CEMP."

10. Defendant Merger Sub is a Delaware corporation, a direct, wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

11. Defendant Garheng Kong M.D., Ph.D ("Kong") is a director and Chairman of the Board of Cempra.

12. Defendant David Zaccardelli Pharm.D. ("Zaccardelli") is a director and Acting Chief Executive Officer ("CEO") of Cempra.

13. Defendant Richard Kent M.D. ("Kent") is a director of Cempra.

14. Defendant David Gill ("Gill") is a director of Cempra.

15. Defendant Dov A. Goldstein M.D. ("Goldstein") is a director of Cempra.

16. Defendant John H. Johnson ("Johnson") is a director of Cempra.

17. Defendant P. Sherrill Neff ("Neff") is a director of Cempra.

Case 1:17-cv-00898-WO-JEP   Document 1   Filed 10/06/17   Page 3 of 15

18. Defendant Michael Dougherty ("Dougherty") is a director of Cempra.

19. The defendants identified in paragraphs 11 through 18 are collectively referred to herein as the "Individual Defendants."

20. Defendant Melinta is a Delaware corporation and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

21. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 as a class action on behalf of himself and the other public stockholders of Cempra (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

22. This action is properly maintainable as a class action.

23. The Class is so numerous that joinder of all members is impracticable. As of June 29, 2017, there were approximately 256,369,840 shares of Cempra common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

24. Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

25. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

4

26. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

27. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company*

28. Cempra is a clinical-stage pharmaceutical company focused on developing differentiated anti-infectives for the acute care and community settings to meet critical medical needs in the treatment of infectious diseases. The Company's lead product, solithromycin, is being developed in oral capsules, intravenous ("IV"), and suspension formulations, for the treatment of community-acquired bacterial pneumonia ("CABP"), one of the most serious infections of the respiratory tract in adults and children, as well as for ophthalmic infections and other indications.

29. The CABP antibiotic market has critical unmet needs. The effectiveness of many antibiotics has declined worldwide due to increased bacterial resistance to currently available antibiotics. According to the Centers for Disease Control and Prevention ("CDC"), macrolide resistance to Streptococcus pneumoniae, the pathogen that most frequently causes CABP, now averages 49% across the United States. These macrolide resistance rates exceed 90% in parts of

5

Asia. According to the CDC, pneumonia is the most frequent cause of death from an infection in the United States.

30. The Company believes that its lead product solithromycin could be an effective antibiotic for CABP that addresses the current challenges posed by macrolide resistance. Cempra has applications under review for the IV and oral capsule formulations of solithromycin to treat CABP in adults, with the U.S. Food and Drug Administration and the European Medicines Agency. In December 2016, the Company received a Complete Response Letter related to its New Drug Applications for oral and IV solithromycin seeking additional clinical and manufacturing data prior to potential approval.

31. The Company's second product, fusidic acid, is an antibiotic that has been used for decades outside the United States, including in Western Europe, but has never been approved in the United States. Cempra recently completed a successful Phase 3 study evaluating fusidic acid as an oral treatment of acute bacterial skin and skin structure infections, which are frequently caused by methicillin-resistant Staphylococcus aureus ("MRSA"). The Company is exploring fusidic acid for the long-term oral treatment of refractory bone and joint infections, including prosthetic joint infections caused by staphylococci, including S. aureus and MRSA. Currently, there is no optimal oral, chronic antibiotic for treating these infections.

*The Proxy Statement Omits Material Information, Rendering It False and Misleading*

32. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

33. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

34. First, the Proxy Statement omits material information regarding Cempra's and

6

Melinta's financial projections, as well as the valuation analyses performed by the Company's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley").

35. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

36. With respect to each of Cempra's and Melinta's financial projections, the Proxy Statement discloses certain Company, Melinta, and pro forma projections for non-GAAP (generally accepted accounting principles) metrics, including EBIT, net income, and unlevered free cash flow, but it fails to provide stockholders with the necessary line item projections for the metrics used to calculate these non-GAAP measures or otherwise reconcile the non-GAAP projections to the most comparable GAAP measures.

37. To avoid misleading stockholders with non-GAAP financial measures in business combinations such as the Proposed Transaction, publicly traded companies must provide a reconciliation of the differences between the non-GAAP financial measures with the most comparable financial measures calculated and presented in accordance with GAAP. Indeed, defendants acknowledge in the Proxy Statement that the non-GAAP projections disclosed to stockholders "were calculated by Cempra management using GAAP and other measures which are derived from GAAP, but such estimates constitute non-GAAP financial measures within the meaning of applicable rules and regulations of the SEC." Notwithstanding the use of GAAP

7

Case 1:17-cv-00898-WO-JEP   Document 1   Filed 10/06/17   Page 7 of 15

measures to calculate the non-GAAP projections disclosed to stockholders, defendants chose not to disclose the GAAP measures used to calculate those projections. As such, stockholders are entitled to the line item projections used to calculate the Company's and Melinta's standalone and pro forma non-GAAP projections or a reconciliation of the non-GAAP projections to the most comparable GAAP measures.

38. Also with respect to Cempra's financial projections, the Proxy Statement fails to disclose Company management's projections of the synergies that are expected to result from the Proposed Transaction, as well as the Company's current and projected net operating losses, which Morgan Stanley excluded from its Discounted Cash Flow Analyses.

39. With respect to Morgan Stanley's Discounted Cash Flow Analyses of Cempra and Melinta, the Proxy Statement fails to disclose: (i) the line item projections of Cempra's and Melinta's expected unlevered free cash flows as used by Morgan Stanley in its analyses; and (ii) the actual inputs and assumptions underlying the discount rate ranges selected by Morgan Stanley in its analyses, including the assumptions used in Morgan Stanley's cost of capital and cost of equity calculations for each of Cempra and Melinta.

40. With respect to Morgan Stanley's Equity Research Analyst Price Targets, the Proxy Statement fails to disclose the individual price targets set by each of the seven equity research analysts that Morgan Stanley relied upon in its analysis.

41. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Certain Financial Projections;" and (ii) "Opinion of Cempra's Financial Advisor."

42. Second, the Proxy Statement omits material information regarding potential conflicts of interest of the Company's officers and directors.

8

Case 1:17-cv-00898-WO-JEP   Document 1   Filed 10/06/17   Page 8 of 15

43. The Proxy Statement indicates that, in connection with the Proposed Transaction, Cempra has entered into severance agreements with each of its executive officers, Zaccardelli, Mark Hahn, David Oldach and John Bluth, and senior officers David Pereira and Munir Abdullah. The severance agreements will provide these Company officers with lucrative payouts that they will receive only in connection with the successful completion of the Proposed Transaction. Notwithstanding the potential for conflicts of interest that can arise as a result of these severance agreements, the Proxy Statement fails to (but must) disclose the timing and nature of all communications regarding these severance agreements with Cempra's officers, including who participated in all such communications.

44. Further, the Proxy Statement indicates that on May 18 and July 23, 2017, respectively, Individual Defendants Dougherty and Goldstein recused themselves from the sales process due to potential conflicts of interest. The Proxy Statement, however, fails to disclose: (i) the nature of their potential conflicts of interest; (ii) the reason it took so long to recuse themselves after Cempra received Melinta's initial proposal in January 2017; and (iii) whether Dougherty and Goldstein recused themselves from the Board vote on the Proposed Transaction.

45. The full disclosure of information relating to potential conflicts of interest faced by officers and directors in connection with a merger transaction is necessary to provide stockholders with illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

46. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Background of the Merger;" and (ii) "Interests of Cempra's Directors and Executive Officers in the Merger."

47. Third, the Proxy Statement omits material information relating to potential

conflicts of interest of Cempra's financial advisors. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

48. The Proxy Statement states that, in the past two years, "Morgan Stanley or its affiliates have provided financing services and financial advisory services to Cempra and its affiliates." The Proxy Statement, however, fails to disclose the nature and timing of those services to Cempra. Further, the Proxy Statement fails to disclose whether Morgan Stanley or its affiliates have provided any services to Melinta or its affiliates in the past years, and if so, the nature and timing of those services, and the amount of compensation earned by Morgan Stanley or its affiliates in connection with those services.

49. The Proxy Statement indicates that, in addition to engaging Morgan Stanley, Cempra engaged Stifel, Nicolaus & Company, Incorporated ("Stifel") to provide advice to Cempra's board of directors and management with respect to a strategic process, and that Stifel interfaced and negotiated with Melinta and its representatives throughout the process. The Proxy Statement, however, fails to disclose the terms of the engagement letter that the Company entered into with Stifel, including the amount of compensation that Stifel earned in connection with its services. Further, the Proxy Statement fails to disclose whether Stifel has provided any services to Melinta or its affiliates in the past three years, and if so, the nature and timing of those services, and the amount of compensation earned by Stifel or its affiliates in connection with those services. The Proxy Statement also fails to disclose the reason the Board determined it was necessary to engage Morgan Stanley as a second financial advisor to provide a fairness opinion, including whether Morgan Stanley was hired as a result of a perceived conflict of interest on the part of Stifel.

50. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Background of the Merger;" and (ii) "Opinion of Cempra's Financial Advisor."

51. Fourth, the Proxy Statement omits material information regarding the background of the Proposed Transaction. The Company's stockholders are entitled to an accurate description of the process the directors used in coming to their decision to support the Proposed Transaction.

52. The Proxy Statement fails to disclose whether Cempra entered into any confidentiality agreements with any parties in connection with the potential sale of the Company, and if so, the Proxy Statement must disclose the terms of those confidentiality agreements, including whether they contain a standstill and/or "don't ask, don't waive" provision that are or were preventing those counterparties from submitting superior offers to acquire the Company.

53. Further, the Proxy Statement indicates that the Cempra Board determined to enter Cempra into an exclusivity agreement with Melinta on August 1, 2017, shortly after the Board instructed Morgan Stanley to inform "Company A" and "Company D" that the terms of their most recent proposals were insufficient. The Proxy Statement fails to disclose whether any parties reached out to Cempra or its affiliates regarding submitting a revised merger proposal during the pendency of the exclusivity period, and if so, Cempra's response to those parties.

54. The omission of this material information renders the "Background of the Merger" section of the Proxy Statement false and misleading.

55. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Cempra's stockholders.

11

# COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Cempra**

56. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

57. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Cempra is liable as the issuer of these statements.

58. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

59. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

60. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

61. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

62. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

63. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and Melinta

64. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

65. The Individual Defendants and Melinta acted as controlling persons of Cempra within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Cempra and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

66. Each of the Individual Defendants and Melinta was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

67. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly in the making of the Proxy Statement.

68. Melinta also had direct supervisory control over the composition of the Proxy

13

Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy Statement.

69. By virtue of the foregoing, the Individual Defendants and Melinta violated Section 20(a) of the 1934 Act.

70. As set forth above, the Individual Defendants and Melinta had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

14

F.   Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: October 6, 2017

|  |  |
|---|---|
| | **HENDREN REDWINE & MALONE PLLC** |
| **OF COUNSEL:** | /s/ J. Michael Malone             . |
| | J. Michael Malone, Esq. |
| **RM LAW, P.C.** | N.C. State Bar No. 26512 |
| Richard A. Maniskas | 4600 Marriott Drive, Suite 150 |
| 1055 Westlakes Drive, Suite 300 | Raleigh, NC 27612 |
| Berwyn, PA 19312 | mmalone@hendrenmalone.com |
| Telephone: (484) 324-6800 | Telephone: (919) 573-1423 |
| Facsimile: (484) 631-1305 | Facsimile: (919) 420-0475 |
| | *Attorneys for Plaintiff* |